IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:17-688-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JAMIE PATTERSON | ) | |
| | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A). The defendant contends that his two medical conditions could be exacerbated by COVID-19, and therefore he should be released.

In its opposition memorandum, the government argues that the defendant has not shown extraordinary and compelling reasons for his release, and alternatively, even if he did, his release would not be justified after careful examination of the 18 U.S.C. § 3553(a) factors. The defendant replied thereto.

For the following reasons, the defendant's motion (ECF No. 1417) is denied.

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

1

§ 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The defendant avers in his motion that he has filed a motion for compassionate release with the Warden to exhaust his remedies and has not received a response from the Warden. The government notes that the Warden rejected the defendant's request due to the absence of any debilitating medical condition. Accordingly, the court will proceed to consider the motion on the merits.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for

compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for

3

release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

DISCUSSION

I. *Defendant's Medical Conditions*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

In regard to his medical conditions, the defendant contends that he suffers from high blood pressure and high cholesterol. The BOP medical records reveal that he has been diagnosed with this maladies. The record also reveals that the defendant contracted COVID-19 in January 2021 and, fortunately, appears to have successfully recovered without

5

3:17-cr-00688-JFA     Date Filed 05/23/22     Entry Number 1494     Page 6 of 11

significant consequence.  Additionally, he has been fully vaccinated for COVID-19.

Finally, the defendant's Presentence Report (PSR) prepared in 2019 indicates that the defendant then reported that he was in overall good physical health, but that he had been diagnosed with high blood pressure which has been controlled with prescription medication.

Before March 29, 2021, the CDC presented two separate lists of conditions that either definitively entailed a greater risk of severe illness or "might" entail a greater risk of severe illness.  Those "might" conditions were asthma (moderate-to-severe); cerebrovascular disease; cystic fibrosis; hypertension; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight; pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus.  At that time, the Government maintained – and most courts agreed – that inmates with conditions on the "might" list did not present an extraordinary basis for relief. *See, e.g., United States v. Durham*, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020); *United States v. Moldover*, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension.").  In the March 29 revision, the CDC merged the two lists without extensive explanation. The CDC also presents a page with information for healthcare providers, which discusses the evidentiary basis for designating each risk factor and indicates that there remains less extensive support for drawing conclusions regarding most conditions formerly listed as "might" factors. See Centers for Disease Control and

6

Prevention, "Underlying Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (accessed November 15, 2021).

On this record, the court determines that the defendant has not demonstrated an extraordinary and compelling need for his release based upon his current medical conditions. Even if he had, however, this court would nevertheless be constrained to deny his motion because the § 3553(a) sentencing factors, despite the defendant's satisfactory post-sentencing conduct while incarcerated, militate against the defendant's release.

Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

*Factors Under 18 U.S.C. § 3553(a)*

1. *Nature and Circumstances of the Offense*. The defendant pleaded guilty to conspiracy to possess with intent to distribute and distribution of 1 kilogram or more of heroin. The evidence produced at the guilty plea colloquy disclosed that the defendant was a member of a large scale drug trafficking organization that operated in the Midlands area of South Carolina. Defendant's involvement in the conspiracy was revealed by court-ordered wire taps, surveillance, and cooperating source interviews.

Regarding the criminal charges before this court, the defendant was one of 16 individuals named in a 42-count Superseding Indictment filed on November 28, 2017 in the District of South Carolina. The defendant was charged in the following in Counts 1, 3, 4, 22,

23, 28, 29, 30, 31, 36, 38, and 39.

After executing a signed, written plea agreement (ECF No. 571), the defendant pleaded guilty to Count 1 of the Superseding Indictment charging him with conspiracy to possess with intent to distribute and distribute 1 kilogram or more of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The defendant was ultimately held accountable for 2,280 grams of heroin.

The Presentence Report (PSR) (ECF No. 718) prepared by the United States Probation Office determined the defendant's total offense level was 29 and his criminal history category was III. The defendant's offense level was driven, in part, by a two-level enhancement for using a weapon in connection with his crime. The Guideline range would have been 108 to 135 months, but because of the mandatory minimum provided by statute, the range became 120 to 135 months. On this record, the court imposed a sentence of 120 months.

The defendant did not file an appeal of his conviction and sentence.

The defendant is scheduled for release from the BOP in February 2026. The defendant has served approximately one half of his sentence. He is located at the Metropolitan Detention Center in Brooklyn, New York.

2. *History and Characteristics of the Defendant*. Before engaging in the conduct which underlays his federal charge, the defendant's criminal history record reflects he has convictions in the state of New York for multiple counts of Robbery, 1st Degree; Criminal Possession of a Weapon, 2nd Degree; Murder, 2nd Degree: with Intent; and Robbery, 2nd

Degree. Additionally, the defendant has prior traffic violation convictions for Driving Under the Influence; Reckless Driving; and Leaving Scene of Accident Unattended Vehicle.

According to the PSR, the defendant was raised by both his parents until the age of 8. Both of his parents are now deceased. The defendant has four siblings and he described his upbringing as good. He is married, but separated and he has no children. He withdrew from high school in the 10th grade. He obtained his GED while at the New York Department of Corrections (NYDC). He also received his associate degree in business management from a community college while at the NYDC. The defendant has prior work experience as a plumber. He moved to Columbia, South Carolina shortly after release from the NYDC.

The defendant states that if released, he would stay with his brother in New York and work as a licensed plumber. He would also continue his drug rehabilitation.

*Post Sentencing Conduct*

The BOP records show that the defendant has not had any disciplinary infractions in the last 6 months.

The defendant has taken various educational courses and programming dealing with health, personal finance, and employment.

3. *Seriousness of the Crimes*. As noted, this court regards the defendant's crime as very serious and are fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

In sum, the § 3553(a) factors discussed above strongly militate against a sentence reduction at this time.

## II. *Additional Arguments Advanced by the Defendant*

The defendant's original motion refers to the Fourth Circuit Court of Appeals' decision in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). McCoy dealt with the anti-stacking provisions of the First Step Act and whether they could be made retroactive in compassionate release request cases. The defendant's sentence was not stacked pursuant to § 924(c) so the *McCoy* decision has no application to the defendant's case.

The defendant's motion also bears a cryptic reference to "substantive due process" and "prohibition 8th Amendment." To the extent these can be read to assert some type of due process or 8th Amendment violation, the court finds no support for these claims.

CONCLUSION

For the foregoing reasons, the court determines that, even if the defendant had demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The defendant's motion for compassionate release is respectfully denied. (ECF No. 1417).[2]

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

May 23, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[2] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")